IN THE MATTER OF JOSEPH MARAN, JR.,
ATTORNEY-AT-LAW.

Argued May 8, 1979—Decided June 7, 1979.

*Mr. Richard J. Engelhardt* argued the cause for complainant, *Colette A. Coolbaugh,* Chief, Central Ethics Unit.

*Mr. Donald R. Conway* argued the cause for respondent.

PER CURIAM. This ethics proceeding against respondent, Joseph Maran, Jr., grows out of an investigation by the Essex County Prosecutor's office into charges that respondent was involved in a conspiracy to defraud insurance companies in the settlement of accident claims. The investigation was also directed at attorney M who at one time had rented space in the suite of offices occupied by respondent's law firm and who had handled a large number of accident cases for respondent. The investigation disclosed that inflated medical bills had been submitted in connection with the settlement of many of these cases.

As a result of the investigation, attorney M was indicted for insurance fraud and pleaded guilty. He was disbarred by this Court in June 1973. A Dr. W, who was also involved in the investigation, waived indictment and trial by jury and pleaded guilty to an accusation that he had conspired with respondent to obtain money by false pretenses. The charges against respondent were presented to the Grand Jury which, after hearing extensive testimony and reviewing many exhibits, returned a No Bill as to respondent. However, it recommended that his conduct in the matter be referred to the Essex County Ethics Committee.

A statement of charges was filed against respondent by the Committee, and in May 1978 a superseding complaint containing 63 counts was filed by Central Ethics. Because of the number and the complexity of the charges filed, this Court, by order dated June 1, 1978, recalled retired Supreme Court Justice Nathan L. Jacobs to hear the matter and report thereon to this Court. A formal hearing was held before Justice Jacobs on October 18, 1978 at which respondent appeared with counsel. Thereafter, briefs were filed and on February 6, 1979 the report of Justice Jacobs was filed.

It is unnecessary to detail the numerous charges filed against respondent or to set forth all of the evidence presented at the hearing. We will deal only with those matters which Justice Jacobs found constituted ethical violations.

The first involved respondent's law firm trust account and records which lacked a ledger book or similar record showing the source of all funds deposited in such account as required by R. 1:21–6 (recently reinforced by amendment effective January 1, 1979). Justice Jacobs found that the account was handled "in clear disregard of the terms and contemplations of the pertinent disciplinary rules (DR 9–102 and its predecessor canons)."

On twenty separate occasions between March 1970 and December 1972 the trust account admittedly was overdrawn. Justice Jacobs rejected respondent's explanation that the overdraft situation was the result of clients' receiving the

proceeds of recoveries immediately upon their endorsement of the drafts issued to them whereas the drafts usually were not deposited in the trust account until the end of the week. He noted that oftentimes the payees of the overdrafts were not the same persons for whose account trust funds were thereafter deposited to offset the overdrafts. He concluded that at least during brief intervals "trust funds were being misused."

Justice Jacobs, while recognizing that no loss or prejudice to any client took place, was critical of respondent's explanation that, in any event, the overdrafts were covered by large sums of legal fees which the firm left in the trust account for long periods of time even after it became entitled to them. Justice Jacobs found that the design of DR 9–102 was that where there was no dispute as to the attorney's fee it may be withdrawn immediately when due and, in any event, should not remain in the trust account any longer than reasonably required by the circumstance. This avoids unnecessary commingling in the trust account and deceptive financial recording in the law firm's books.

Another charge against respondent resulted from his issuance of a check on the trust account to another attorney. The check bears the notation "loan." Respondent had no recollection of the transaction, but did recall that on several occasions when cases of this attorney were settled and the checks were being awaited, the attorney was "advanced" sums by checks drawn on the trust account. Justice Jacobs found that the source of the funds issued to the attorney were nowhere indicated, in clear violation of DR 9–102; R. 1:21–6. Respondent's suggestion that the money came from "our undistributed fees" was strongly criticized as running counter to court-established safeguards against commingling in and misuse of trust accounts.

Justice Jacobs was also critical of the issuance by respondent of 51 trust account checks amounting to $15,000 to one client and 25 trust account checks to various persons named "Williams" without any record as to the source of the funds

or for whom they had been held. Respondent claimed that the checks represented personal loans or were advances to clients all made from undistributed fees. Justice Jacobs found the issuance of the checks to constitute violations of DR 9–102 and DR 5–103.

Another count charged that respondent compensated Dr. W for the doctor's referral of patients to respondent's law firm. Justice Jacobs found that the evidence fully supported the charge. Dr. W testified that originally he had referred patients to respondent's law firm without any suggestion of compensation. He said, however, that respondent had telephoned him and suggested that he submit bills of a "higher nature." Dr. W did this and began receiving checks signed by respondent mostly in the sum of $50 which Dr. W regarded as referral fees. Respondent's explanation that the checks were advance payments for prospective medical reports was rejected as not credible.

The last ethical violation of which respondent was found guilty stemmed from a complaint made by a Mr. Belasco who had been involved in an automobile accident. He had been referred to a Mr. Pecora, whom he believed to be an attorney, to handle his claim. In fact, Mr. Pecora was a principal of Rapid Adjustment Bureau, Inc. and was not an attorney. Pecora had Belasco sign a printed form of agreement retaining respondent's law firm to handle the claim. The agreement was not signed by an attorney.

Respondent testified that Pecora and his associate Rosenthal, whom he described as independent investigators, did work for him securing reports and statements and otherwise "worked up" the file in a case until it was ready for settlement. They would then negotiate settlements under respondent's instructions. However, respondent denied that Pecora engaged in any solicitation, although he admitted that Pecora was authorized to carry the forms of respondent's retainer agreements and have them executed by clients of the law firm.

Justice Jacobs found that the described practice not only violated the terms and purpose of the contingent fee rule, R.

1:21–7(b) and (g), but was incompatible with any true professional relationship between attorney and client.

Justice Jacobs' report in this matter is fully supported by the record. We adopt his findings and conclusions as our own.

In considering the extent of discipline, we recognize that Justice Jacobs found that the more serious charges against respondent had not been proven. However, the ethical violations shown are substantial and indicate an indifference towards and disregard of court and disciplinary rules designed to maintain the high level of attorney responsibility and fidelity. We are assured by respondent that at the present time his books and records and professional conduct measure up to required standards.

Under the circumstances, we conclude that respondent should stand suspended from the practice of law for a period of six months and until the further order of this Court. So ordered.

*For suspension*—Chief Justice HUGHES and Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER and HANDLER—7.

*Opposed* —None.

### ORDER

It is ORDERED that JOSEPH MARAN, JR. of Newark be suspended from the practice of law for six months and until the further order of the Court, effective June 25, 1979; and it is further

ORDERED that JOSEPH MARAN, JR. be and hereby is restrained and enjoined from practicing law during the period of his suspension; and it is further

ORDERED that respondent comply with all the regulations of the Disciplinary Review Board governing suspended, disbarred or resigned attorneys.